**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **BENJAMIN COLLINS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-16-1216-STE** |
| | ) | |
| **NANCY A. BERRYHILL, Acting** | ) | |
| **Commissioner of the Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

## I.    PROCEDURAL BACKGROUND

The Social Security Administration denied Plaintiff's applications for disability insurance benefits and supplemental security income initially and on reconsideration. An administrative hearing was held and an Administrative Law Judge (ALJ) issued a favorable decision. (TR. 124-130). On its own motion, the Appeals Council reviewed the

administrative decision and concluded that it lacked substantial evidence and contained legal error. (TR. 208-212). As a result, the Appeals Council remanded the case for additional administrative findings. (TR. 132-135). A second administrative hearing was held and the same ALJ issued an unfavorable decision. (TR. 12-29). Following the second decision, the Appeals Council denied Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.    THE FIRST ADMINISTRATIVE DECISION

The first administrative decision was dated June 2, 2014. (TR. 124-130). In the decision, the ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520 & 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 30, 2011, the alleged disability onset date. (TR. 126). At step two, the ALJ determined Mr. Collins had the following severe impairments: chronic back pain; dysthymic disorder; generalized anxiety disorder; and personality disorder. (TR. 126). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 127).

At step four, the ALJ concluded that Mr. Collins had the residual functional capacity (RFC) to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). The claimant can occasionally stoop, kneel, and crouch.  He can follow simple and detailed instruction but not complex.

(TR. 128). Based on this RFC, the ALJ concluded that Mr. Collins had no ability to perform his past relevant work. (TR. 129). Finally, based on Plaintiff's RFC, advanced age, limited education, and lack of transferrable skills, the ALJ concluded that Plaintiff was disabled because there were no jobs he could perform. (TR. 129).

## III.   THE APPEALS COUNCIL'S REMAND

On its own initiative, the Appeals Council reviewed the June 2, 2014 decision and concluded that it lacked substantial evidence and contained legal error. (TR. 208-212). Specifically, the Appeals Council concluded:

- the ALJ failed to provide the required rationale citing evidence supporting the RFC limitations,

- the onset date of April 30, 2011 was not supported by the record, and

- the ALJ failed to provide a rationale to support the credibility determination.

(TR. 132-133). Accordingly, upon remand, the Appeals Council ordered the ALJ to:

- obtain additional evidence concerning the impairments the ALJ had deemed severe, including, if warranted, a consultative examination and medical source statements about what the claimant can still do despite his impairments,

- if necessary, obtain evidence from a medical expert (ME) to clarify the nature, severity and onset date of the impairments,

- further evaluate Plaintiff's credibility, providing rationale in support,

- further consider Plaintiff's maximum RFC and provide appropriate rationale with specific references to evidence of record in support of the RFC limitations, and

- if warranted, obtain evidence from a vocational expert (VE) to clarify the effect of the assessed limitations on Mr. Collins' occupational base.

(TR. 133-134).

## IV. THE SECOND ADMINISTRATIVE DECISION

On March 1, 2016, a second administrative hearing was held and on April 1, 2016, the ALJ issued an unfavorable decision. (TR. 12-29). In doing so, The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520 & 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 7, 2011, the alleged disability onset date. (TR. 15).[1] At step two, the ALJ determined Mr. Collins had the following severe impairments: arthritis in the back; multilevel spondylosis; dysthymic disorder; generalized anxiety disorder; and a personality disorder. (TR. 15). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 16).

At step four, the ALJ concluded that Mr. Collins had the residual functional capacity (RFC) to:

> [P]erform medium work as defined in 20 CFR 404.1567(c) and 416.967(c). Specifically, the claimant can lift and carry up to 50 lbs. occasionally and 25 lbs. frequently; stand and walk up to six hours in an eight-hour workday; and sit up to six hours in an eight-hour workday. With regard to postural activities, the claimant can occasionally stoop, kneel, and crouch. Mentally, the claimant can understand and remember simple instructions and have only occasional interaction with the public.

(TR. 18-19).

---

[1]   At the second hearing, Plaintiff agreed to amend the onset date from April 30, 2011 to June 7, 2011. *See* TR. 39-40.

With this RFC, the ALJ found that Plaintiff was capable of performing his past relevant work as a maintenance man. (TR. 27). Even so, the ALJ made alternate findings at step five. At the March 1, 2016 hearing, the ALJ presented the limitations set forth in the RFC, as outlined above, to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 46). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles. (TR. 46-47). The ALJ adopted the testimony of the VE and concluded at step five that Mr. Collins was not disabled based on his ability to perform the identified jobs. (TR. 29).

## V.    ISSUES PRESENTED

On appeal, Plaintiff alleges the ALJ erred in: (1) his duty to develop the record, instead improperly relying on stale evidence; (2) his evaluation of opinion evidence from a medical expert (ME), consulting physicians, state agency physicians, and treating physicians; (3) his evaluation of Plaintiff's mental impairment; and (4) his evaluation of Plaintiff's RFC.

## VI.    STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh

the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805

F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## VII.  DUTY TO DEVELOP THE RECORD/USE OF STALE EVIDENCE

As stated, two administrative hearings took place in this case approximately two

years apart—on April 21, 2014 and March 1, 2016. (TR. 36-68). In his first proposition,

entitled: "Short Shrift Hearing," Plaintiff argues that the ALJ failed to develop the record

by: (1) limiting his inquiry of Plaintiff at the second hearing to his age and level of

education and (2) relying on "stale" information and testimony from the April 2014

hearing "as the foundation of his decision." (ECF No. 20:4). The Court agrees.

"It is well established that a Social Security disability hearing is a nonadversarial

proceeding, in which the ALJ has a basic duty of inquiry, to inform himself about facts

relevant to his decision and to learn the claimant's own version of those facts." *Thompson*

*v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 1993) (internal quotation marks and citations

omitted). In *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992), the court noted

that in a case where the claimant is unrepresented, the ALJ's duty is "heightened" and

that "[t]he length, or brevity, of a benefits hearing is not dispositive" of whether or not

the ALJ had met his duty to develop the record. *Id.* at 1374. Instead, "the more important

inquiry is whether the ALJ asked sufficient questions to ascertain (1) the nature of a

claimant's alleged impairments, (2) what on-going treatment and medication the claimant

is receiving, and (3) the impact of the alleged impairment on a claimant's daily routine

and activities." *Id.* at 1375.

In *Thompson*, the plaintiff argued that the ALJ erred in his duty to develop the record due to the brevity of the hearing and the ALJ's failure to ask certain questions. *Thompson*, 987 F.2d at 1492. The Circuit Court agreed, noting that although the plaintiff was represented by counsel, the ALJ still had a duty to develop the record, and the scope of questioning was dictated by the three-part inquiry outlined in *Musgrave*. *See id.*

*Musgrave* and *Thompson* are controlling in the instant case. As discussed, on its own initiative, the Appeals Council examined the first decision and ultimately concluded that it lacked substantial evidence and the ALJ had committed legal error. (TR. 208-212). As a result, the Appeals Council specifically instructed the ALJ to: "further evaluate Plaintiff's credibility, providing rationale in support." (TR. 134).

In the second decision, the ALJ evaluated Plaintiff's credibility in conjunction with the medical evidence. (TR. 19-27). First, the ALJ evaluated Plaintiff's allegations concerning his physical impairment, citing Mr. Collins' testimony from the April 2014 hearing regarding the nature and location of Plaintiff's pain, Plaintiff's medication, daily activities, and limitations on his abilities to sit, stand, walk, and lift. (TR. 18). Ultimately, the ALJ discounted Mr. Collins' credibility based on "new evidence" including testimony from an ME, and records from a consultative examination. (TR. 20). The ALJ underwent a similar analysis in evaluating Plaintiff's credibility concerning his mental impairments— first summarizing Plaintiff's testimony from the 2014 hearing and ultimately, concluding that Mr. Collins was "only somewhat credible." (TR. 24, 27). In support of his findings, the ALJ cited the 2014 hearing testimony as well as evidence which pre- and post-dated the second hearing. (TR. 27).

The ALJ technically complied with the Appeals Council's directive to further evaluate Mr. Collins' credibility. But under *Musgrave*, the ALJ should have asked sufficient questions at the second hearing "to ascertain (1) the nature of [Mr. Collins'] alleged impairments, (2) what on-going treatment and medication [Mr. Collins] [wa]s receiving, and (3) the impact of the alleged impairment on [Mr. Collins'] daily routine and activities." *Musgrave*, 966 F.2d at 1375. But instead, the ALJ's inquiry at the second hearing was limited to asking Plaintiff his age and level of education. (TR. 29). The limited inquiry, combined with the ALJ's reliance on testimony from 2014 constitutes reversible error. *See Thompson*, 987 F.2d at 1492 (finding reversible error based on the ALJ's failure to develop the record, stating: "[i]t matters that Ms. Thompson was not asked enough questions or the right questions at the hearing because her answers were needed by the ALJ as evidence to support his determination of her credibility.").

## VIII. THE ALJ'S EVALUATION OF VARIOUS MEDICAL OPINIONS

Mr. Collins alleges legal error in the ALJ's evaluation of opinions from: (1) the ME, Dr. Darius Ghazi; (2) consulting physicians, Dr. S.A. Chaudry and Dr. R. Keith Green; (3) state agency physicians, Drs. John Vorhies, Kenneth Wainner, and Howard Atkins; and (4) treating physicians, Drs. Semeh Hanna and Maribel Colon-Santiago. The Court finds error in the ALJ's evaluation of opinions from Drs. Ghazi and Chaudry, and rejects Plaintiff's remaining allegations.

### A. ALJ's Duty to Evaluate Medical Opinions

An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant

and the medical professional. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004); 20 C.F.R. § 416.927(d). In determining what weight to accord any medical opinion, including that offered by a non-examining medical expert, an ALJ must consider:

(1) the length of the treatment relationship and the frequency of examination;

(2) the nature and extent of the treatment relationship,

(3) the degree to which the physician's opinion is supported by relevant evidence;

(4) the consistency between the opinion and the record as a whole;

(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and

(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Hamlin*, at 1215, n. 7; 20 C.F.R. §§ 404.1527(e)(2)(iii) & 416.927(e)(2)(iii).

Additionally, the ALJ may not selectively review any medical opinion and must provide a proper explanation to support his rationale in support of his findings. *See Chapo v. Astrue*, 682 F.3d 1285, 1292 (10th Cir. 2012) ("We have repeatedly held that [a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."); *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects."); *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (noting that the ALJ's reasons stated in evaluating medical opinions must allow for meaningful appellate review).

## B.    The ME's Opinion

At the hearing, medical expert Dr. Ghazi testified. (TR. 42-44). Dr. Ghazi reviewed Mr. Collins' medical file, including a CT scan of Plaintiff's back, and concluded that Plaintiff could:

- sit for 6 hours during an 8-hour workday,

- stand and walk for approximately 4 hours during an 8-hour workday, with breaks,

- lift 20 pounds maximum, frequently, and

- only occasionally stoop, kneel, crouch, be exposed to unprotected heights, and climb a ladder.

(TR. 43).[2] The ALJ gave Dr. Ghazi's opinion "some weight." (TR. 23). When comparing the RFC to Dr. Ghazi's opinion, the portion of the opinion the ALJ seemed to credit was Plaintiff's ability to only occasionally stoop, kneel, and crouch. *Compare* TR. 19 *with* TR. 43. The ALJ rejected the remainder of Dr. Ghazi's opinions stating: (1) they were not warranted by the evidence and (2) appeared to be based on Dr. Ghazi giving credence to Plaintiff's subjective allegations. (TR. 23). Neither rationale is accurate.

First, consultative examiner Dr. S.A. Chaudry opined even more restrictive limitations in Plaintiff's ability to sit, stand, and walk. (TR. 849). Thus, contrary to the ALJ's statement, Dr. Ghazi's functional limitations are supported by other evidence in the record. Even so, the Court should not speculate "what evidence" does or does not support

---

[2]  Dr. Ghazi appeared to render an opinion on Plaintiff's ability to manipulate and handle objects, but the extent of the opinion is unclear due to inaudible portions of the record. *See* TR. 43.

Dr. Ghazi's opinion, as the ALJ is tasked with the duty to explain his reasoning to ensure proper review by this Court.

Second, Dr. Ghazi never stated that he was basing his opinions on Plaintiff's subjective allegations. *See* TR. 42-44 (Dr. Ghazi's testimony). Indeed, such a conclusion would seem inapposite, considering that Plaintiff did not testify at the second hearing. While the ALJ may have concluded the Plaintiff's subjective complaints did not warrant the restrictions as opined by Dr. Ghazi, he was not entitled to reject the ME's opinion on this basis alone. *See Medina v. Berryhill*, 2017 WL 1862279, at *8 (D. Colo. May 8, 2017) ("an ALJ may not substitute his judgment for that of a medical source based on the ALJ's conclusion that Plaintiff's complaints are not credible.") For these two reasons, the Court concludes that the ALJ committed legal error in his treatment of the opinions from Dr. Ghazi regarding Plaintiff's functional limitations.

### C. Opinions from Consulting Physicians

The record contains evidence of a reports from two consulting physicians, Dr. Chaudry and Dr. Green. (TR. 450-453, 845-858). Plaintiff contends the ALJ committed legal error in the consideration of both opinions. (ECF No. 20:6-7, 12-14). The undersigned agrees, but only with respect to Dr. Chaudry's opinion.

### Dr. Chaudry

On June 16, 2015, Dr. Chaudry examined Mr. Collins and opined he had a painful range of motion in his lumbar spine in flexion, extension, rotation, and lateral movements, along with bilateral paraspinous muscular tenderness. (TR. 846). Ultimately, Dr. Chaudry

diagnosed Mr. Collins with lumbrosacral spine degenerative arthritis. (TR. 847). Regarding

functional limitations, Dr. Chaudry opined that Mr. Collins could:

- Frequently lift up to 20 pounds,

- Occasionally carry up to 20 pounds,

- Sit and stand for one hour at a time, for a total of three hours of an eight-hour workday,

- Walk for 30 minutes at a time, for a total of two hours of an eight-hour workday,

- Frequently reach, handle, finger, feel, push, and pull with either hand,

- Frequently use foot controls,

- Occasionally climb ladders,

- Frequently climb stairs, balance, stoop, kneel, crouch, and crawl,

- Occasionally be exposed to unprotected heights, and

- Frequently be exposed to moving mechanical parts, operating a motor vehicle, humidity, dust, extreme heat or cold, and noise.

(TR. 848-852). Finally, Dr. Chaudry stated that Mr. Collins' backache would "interfere[]

with physical activities." (TR. 853).

The ALJ recited these opinions in decision and stated:

Dr. Chaudry's opinion is given only "some weight" as his functional assessments are not entirely consistent with his examination findings. For instance, although he found the claimant had normal fine and gross manipulative movements of the hand and 5/5 grip strength, he limited the claimant to frequent (as opposed to unlimited) handling and fingering. Further, with regard to the claimant's exertional capacity, a painful range of motion (a largely subjective complaint) does not warrant the level of limitations opined, especially in light of the minimal objective evidence.

(TR. 22-23). Mr. Collins contends that the ALJ's rationales for discounting Dr. Chaudry's opinions lack substantial evidence. (ECF No. 20:6-7). The undersigned agrees.

Plaintiff challenges the ALJ's statement that the functional assessments were not entirely consistent with the examination findings. According to Plaintiff, the ALJ's comparison of an alleged inconsistency involving Plaintiff's ability to handle and finger was "disingenuous" because constant use of Plaintiff's arms would necessarily exacerbate Plaintiff's back impairment. The Court rejects this particular argument because: (1) it appears to be based only on Plaintiff's counsel's speculation and (2) the ALJ pointed to specific evidence in the record which he believed showed an internal inconsistency in Dr. Chaudry's findings.

However, the ALJ's lack of explanation regarding the remaining limitations render the Court unable to properly review the ALJ's treatment of Dr. Chaudry's opinion. The ALJ stated that the "functional assessments are not entirely consistent with [Dr. Chaudry's] examination findings." (TR. 22) But aside from the manipulation limitations discussed, the ALJ has not pointed to any inconsistency regarding any other "functional assessment"—i.e.—Mr. Collins' ability to sit, stand, walk, lift, carry, push, pull, balance, stoop, kneel, crouch, and crawl, or be exposed to environmental limitations. The lack of explanation renders the ALJ's first rationale legally insufficient. *See Allman v. Colvin*, 813 F.3d at 1332 ("[t]he reasons must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reason for that weight."); *Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir. 2004) (noting that the ALJ's rejection of a doctor's opinion as "inconsistent with the overall case

record," was insufficient because the ALJ did not "specifically highlight those portions of the record with which [the physician's] opinion was allegedly inconsistent").

The ALJ's remaining rationale for discounting Dr. Chaudry's opinion fares no better. According to the ALJ, Plaintiff's "exertional capacity" was not warranted because a "painful range of motion," was "a largely subjective complaint." (TR. 23). But the ALJ is mistaken, as Dr. Chaudry's opinion was not based on Plaintiff's subjective reports, but the physician instead made the assessment after performing a full examination of Mr. Collins. (TR. 845-858).

Neither of the ALJ's rationales for discounting Dr. Chaudry's opinion are sufficient. First, although the ALJ relied on inconsistencies in Dr. Chaudry's examination and his ultimate findings, the ALJ failed to specifically identify any inconsistencies with regard to the bulk of the limitations opined. Second, the ALJ incorrectly concluded that Dr. Chaudry's opinions had been based on subjective complaints alone. Because both rationales for discounting Dr. Chaudry's opinion lacked substantial evidence, reversal and remand is warranted for reconsideration of the opinion.

### Dr. Green

On January 7, 2013, Dr. Green performed a psychological examination on Plaintiff. (TR. 450-453). Dr. Green diagnosed Plaintiff with a cognitive disorder, NOS; dysthymic disorder; generalized anxiety disorder; pain disorder with both psychological factors and a general medical condition; adverse effects of medication, NOS; and a personality disorder. (TR. 452). Dr. Green found that Mr. Collins' functional impairment was in the

"mild-to-moderate" range, he was incapable of handling his finances, and his prognosis was "poor." (TR. 452-453).

The ALJ accorded "some weight" to Dr. Green's opinion, noting that treatment records supported Dr. Green's conclusion that Plaintiff's psychological symptoms were in the "mild-to-moderate" range, but that Plaintiff's hearing testimony contradicted Dr. Green's findings regarding Plaintiff's ability to handle his finances. (TR. 26).

Mr. Collins challenges the ALJ's treatment of Dr. Green's opinion, arguing that the ALJ "cherry-picked" Dr. Green's opinion. (ECF No. 20:13). Specifically, Plaintiff states:

> Dr. Green found history of social isolation, reduced attention, concentration and pace were impaired, impaired capacity for new learning and paranoid ideation. In assessing Plaintiff's RFC, the ALJ found two limitations related to Plaintiff's mental impairments. The ALJ determined that Plaintiff "can understand and remember simple instructions and have only occasional contact with the public." The ALJ made no findings about whether Mr. Collins can respond appropriately to supervisors, co-workers, and usual work situations, Plaintiff asserts that the ALJ's mental RFC determination is flawed because it does not reflect the limiting effects of his several mental impairments.

(ECF No. 20:13-14). Plaintiff appears to believe that the ALJ "cherry-picked" Dr. Green's opinion by failing to include limitations in the RFC regarding Mr. Collins' ability to respond appropriately to supervisors, co-workers, and usual work situations. Plaintiff correctly asserts that an ALJ may not selectively review a medical opinion, "taking only the parts that are favorable to a finding of nondisability." *Chapo v. Astrue*, 682 F.3d 1285, 1292 (10th Cir. 2012) (citing *Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007); *Robinson v. Barnhart,* 366 F.3d 1078, 1083 (10th Cir. 2004), and *Hamlin v. Barnhart,* 365 F.3d 1208, 1219 (10th Cir. 2004)) (internal quotation marks omitted). But the argument is inapplicable here, as Dr. Green never made any findings that Plaintiff was impaired in his

ability to respond appropriately to supervisors, co-workers, and usual work situations. Thus, the Court rejects Plaintiff's challenge to the ALJ's treatment of Dr. Green's opinion.

### D.    Opinions from State Agency Physicians

Next Plaintiff challenges the ALJ's treatment of opinions from state agency physicians Drs. John Vorhies, Kenneth Wainner, and Howard Atkins. The Court rejects Plaintiff's arguments.

### Drs. Vorhies and Wainner

State agency physicians Drs. Vorhies and Wainner, who rendered opinions at the initial and reconsideration determination levels, stated that Plaintiff had the exertional capacity to perform "medium" work. (TR. 74-75, 101-102). In the first decision, the ALJ granted these opinions "little weight." (TR. 128). But in the second decision, the ALJ accorded the opinions "great weight." (TR. 23). Plaintiff argues that the ALJ's different treatment of the same evidence in the two decisions "reinforces the outcome determinative nature" of the decision. (ECF No. 20:7). But beyond this statement, Mr. Collins does not argue that the ALJ had committed legal error in reviewing the evidence or that his treatment of the opinions lacked substantial evidence—the two bases of this Court's review. *See Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010) (noting that the court's scope of review is "to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."). Thus, the Court rejects Plaintiff's challenge to the ALJ's treatment of the opinions from Drs. Vorhies and Wainner.

**Dr. Atkins**

At the initial disability determination level, Dr. Atkins assessed Plaintiff's mental impairments. (TR. 71-77, 82-87). In part, Dr. Atkins rendered two opinions—that Plaintiff could: (1) perform simple tasks and (2) have brief and superficial interaction with the general public. (TR. 77). The ALJ agreed that Mr. Collins was capable of performing simple work, but discounted the second opinion. (TR. 26-27). In doing so, the ALJ correctly stated that Dr. Atkins had based his conclusion on findings from a consultative examiner who had diagnosed Plaintiff with a personality disorder, NOS, with avoidant and paranoid features. *See* TR. 73, 77, 452. However, the ALJ stated that "the remaining evidence" did not suggest that Plaintiff was so limited. (TR. 27). In support, the ALJ cited evidence that Plaintiff was deemed "generally cooperative" and "ma[de] adequate eye contact." (TR. 27).

Mr. Collins argues that the ALJ "utilized his own medical degree" to conclude that findings regarding Plaintiff being cooperative and making adequate eye contact are appropriate reasons for discounting Dr. Atkins' opinion regarding Plaintiff's ability to only have superficial and brief interaction with the public. (ECF No. 20:15). While it is true that the ALJ may not substitute his own opinion for that of Plaintiff's doctor, *Miller v. Chater*, 99 F.3d 972, 977 (10th Cir. 1996), the Court finds that the ALJ did not do so in the instant case. Instead, the ALJ merely weighed the evidence and discounted the opinion based on other findings in the medical record. On review, This Court "will not reweigh the evidence or substitute our judgment for the Commissioner's.") *Lax v. Astrue*, 489 F.3d

1080, 1084 (10th Cir. 2007). Thus, the Court rejects Plaintiff's challenge to the ALJ's treatment of Dr. Atkins' opinion.

### E. Opinions from Treating Physicians

Plaintiff challenges the ALJ's treatment of statements from two treating sources—Drs. Hanna and Colon-Santiago. Neither argument has merit.

### Dr. Hanna

In a treatment note dated December 12, 2013, Dr. Hanna stated that she had told Plaintiff to "try and pursue an education career to help support his basic living requirements since he used to work a physical job that was causing a physical stress." (TR. 649). The ALJ accorded "great weight" to Dr. Hanna's "suggestion" that Plaintiff is not disabled by his back pain, but accorded "little weight" to Dr. Hanna's "implication" that claimant avoid all physical work. (TR. 21). Plaintiff argues that the ALJ "cherry-picked" this opinion. (ECF No. 20:14). The undersigned disagrees.

Classic "cherry-picking" states that an ALJ may not pick and choose through a particular *uncontradicted medical opinion,* selecting the portions that support his decision but ignoring the contrary portions. *Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007) (emphasis added). Here, the ALJ did no such thing. The ALJ did not ignore any portion of Dr. Hanna's statement, nor did the statement itself constitute a "medical opinion," but could be better classified as "vocational advice." *See Moua v. Colvin*, 541 F. App'x 794 (10th Cir. 2013) (treating physician's treatment notes which "suggested [the claimaint] explore job retraining and alternate employment" did not constitute a "medical opinion"); 20 C.F.R. §§ 404.1527(a)(2) & 416.927(a)(2) (defining medical opinions as "judgments

about the nature and severity of [a claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions").

### Dr. Colon-Santiago

In a treatment note dated November 18, 2014, Dr. Colon-Santiago noted: "Pt declines vocational rehab Referral." (TR. 808). In the decision, the ALJ stated: "Dr. Colon-Santiago's assessment and opinion that the claimant would do well with vocational rehabilitation is give [sic] great weight." (TR. 22). Plaintiff argues "that great weight cannot be squared with the ALJ's decision to return Mr. Collins to his past work which required physical exertion as a maintenance man." (ECF No. 20:14). The Court disagrees.

The ALJ concluded that Mr. Collins was capable of performing his past relevant work as a maintenance man. (TR. 27). However, this statement does not preclude Mr. Collins from performing other work which he might learn through vocational rehabilitation, nor does Dr. Santiago's statement limit Mr. Collins to a particular exertional level. The two statements are independent, not inconsistent. Thus, the Court rejects Mr. Collins' challenge to Dr. Santiago's statement regarding vocational rehabilitation.

## IX. THE ALJ'S EVALUATION OF PLAINTIFF'S MENTAL IMPAIRMENT

Mr. Collins alleges the RFC failed to reflect limitations related to: (1) the "severe" impairments at step two involving his anxiety disorder and personality disorder, which manifested as paranoia and social isolation and (2) "moderate difficulties" the ALJ found to exist in the areas of social functioning, and concentration, persistence, and pace. As a

result of the allegedly defective RFC, Plaintiff argues that the resulting hypothetical to the VE was likewise faulty. (ECF No. 20:8-12). The Court disagrees.

### A.    ALJ's Duty in Assessing the Mental RFC

In assessing an individual's mental impairment, the ALJ must employ a "special technique" which involves rating the degree of functional limitation under four broad functional areas. 20 C.F.R. §§ 404.1520a(b)-(c) & 416.920a(b)-(c). This assessment is documented on a Psychiatric Review Technique (PRT) form and is used to rate the severity of the mental impairment at steps two and three of the sequential evaluation process. *See* SSR 96-8p, 1996 WL 374184, at *6-7 (July 2, 1996).

Step four requires a more detailed assessment by itemizing various functions contained in the broad categories summarized on the PRT. *Id.* In assessing the RFC, the ALJ must consider the limitations and restrictions imposed by a claimant's severe impairments and express any mental limitations in terms of specific, work-related mental activities he or she is able to perform. *Id.*, at *6-7.

### B.    No Error in the ALJ's Evaluation of Mr. Collins' Mental Impairment

At step two, the ALJ found that Mr. Collins suffered from "severe" mental impairments involving: dysthymic disorder, generalized anxiety disorder, and a personality disorder. (TR. 15). At step three, while evaluating whether Plaintiff's mental impairments met or equaled a listed impairment, the ALJ concluded that Mr. Collins suffered from "moderate difficulties" in the areas of social functioning (due to his history of social isolation and paranoia) and concentration, persistence, and pace. (TR. 17). At step four, in the RFC determination, the ALJ concluded that Mr. Collins could understand

and remember simple instructions and have only occasional interaction with the public. (TR. 19).

Mr. Collins alleges the RFC failed to reflect limitations related to: (1) the "severe" impairments involving an anxiety disorder and personality disorder, which manifested as paranoia and social isolation and (2) "moderate difficulties" the ALJ found to exist in the areas of social functioning, and concentration, persistence, and pace. (ECF No. 20:8-12, 16-20). As a result of the allegedly defective RFC, Plaintiff alleges that the resulting hypothetical to the VE was likewise faulty. The Court disagrees.

### Severe Impairments at Step Two and
### Limitations Related to Social Isolation and Paranoia

At step two, the ALJ concluded that Plaintiff suffered from a "severe" anxiety disorder and personality disorder. (TR. 15). Mr. Collins alleges that these impairments caused limitations involving paranoia and social isolation. (ECF No. 20:17-20). Plaintiff alleges: (1) the ALJ's RFC which limited Plaintiff to "simple work" and "occasional public contact" was insufficient and (2) the RFC should have reflected limitations in his ability to respond appropriately to supervisors, peers, and usual work situations. (ECF No. 20:9, 17-20). The Court disagrees.

Once a claimant's impairments are deemed severe at step two, the ALJ has a duty to discuss their impact throughout the remainder of the disability determination. 20 C.F.R. §§ 404.1545(a)(2) & 416.945(a)(2). Indeed, in formulating the RFC, the ALJ must discuss the combined effect of all the claimant's medically determinable impairments, both severe and nonsevere. *See Wells v. Colvin,* 727 F.3d 1061, 1065 (10th Cir. 2013). However, the presence of an impairment, albeit severe, does not necessarily equate to corresponding

limitations in the RFC. *Cavalier v. Colvin*, 2014 WL 7408430, at *2 (N.D. Okla. 2014). The RFC need only include such limitations as the medical record substantially supports. *See Kirkpatrick v. Colvin*, 663 F. App'x. 646, 650 (10th Cir. 2016) ("Clearly, an ALJ doesn't commit error by omitting limitations not supported by the record"). Plaintiff argues that the RFC failed to account for Mr. Collins' "severe" personality disorder and anxiety disorder, which manifested through paranoia and social isolation. Due to these impairments and resulting limitations, Plaintiff believes the ALJ should have included limitations relating to Plaintiff's ability to respond appropriately to supervisors, co-workers, and usual work situations. The Court disagrees.

Plaintiff states that "medical records reflect clinicians' observations that Plaintiff suffered from paranoid delusions, not wanting to be around other workers, and uncontrolled anger to medical providers which often interfered with his ability to interact with other people." (ECF No. 20:18-19). In support, Plaintiff cites a sole piece of evidence—a report from Dr. Green who noted that Plaintiff exhibited signs of paranoia and social isolation. (ECF No. 20:13; TR. 452). But Dr. Green never stated that these impairments would result in specific, work-related limitations. (TR. 452). Dr. Green *did* diagnose Plaintiff with "Personality Disorder NOS (with Avoidant and Paranoid Features), but "[t]he mere diagnosis of a condition does not establish its severity or any resulting work limitations." (TR. 452); *Paulsen v. Colvin*, 665 F. App'x. 660, 666 (10th Cir. 2016). Accordingly, the Court rejects Plaintiff's argument regarding the ALJ's failure to incorporate RFC limitations reflecting: (1) the severe impairments of a personality

disorder and/or anxiety disorder and (2) an inability to respond appropriately to supervisors, co-workers, and usual work situations due to paranoia or social isolation.

## Findings on the PRT Form

Plaintiff argues: (1) "the ALJ omitted, without explanation, impairments that he found to exist, such as moderate difficulties in social functioning and maintaining concentration, persistence, and pace" and (2) that the limitation "simple work" failed to reflect these limitations. (ECF No. 20:9). This argument is without merit.

At step three, the ALJ concluded that Mr. Collins suffered from "moderate difficulties" in the areas of social functioning and concentration, persistence, and pace. (TR. 17). But because these findings were made at step three of sequential analysis, the ALJ had no duty to express these particular findings in the RFC. *See Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) ("The ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment."). For these reasons, the Court concludes that the ALJ did not err in his evaluation of Plaintiff's mental impairment.

## No Error in the Hypothetical to the VE

Plaintiff also contends that the hypothetical to the VE was deficient because it failed to include the limitations which Plaintiff believes were improperly withheld. The Court should reject this argument, because it is premised on a finding that the RFC was faulty, which is not the case. In *Qualls v. Apfel*, 206 F.3d 1368 (10th Cir. 2000), the Tenth Circuit Court of Appeals rejected a similar argument, stating:

> Finally, plaintiff contends that the ALJ's hypothetical questions to the VE did not recite all of plaintiff's impairments and, therefore, the VE's answers to

23

those questions could not serve as substantial evidence to support the ALJ's conclusion that plaintiff is not disabled. We have already rejected plaintiff's challenges to the ALJ's RFC assessment. The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision.

*Qualls v. Apfel*, 206 F.3d at 1373. As in *Qualls*, the Court should reject Mr. Collins' allegation that the hypothetical question to the VE was faulty based on a failure to include certain limitations in the RFC.

## X.    PLAINTIFF'S REMAINING ISSUE

Plaintiff also argues that the ALJ erred by failing to perform a "function by function" analysis of Plaintiff's physical RFC. (ECF No. 20:16). But the Court need not address this allegation, as the physical RFC may be affected on remand following a re-evaluation of the opinions from Drs. Ghazi and Chaudry, as well as Plaintiff's own testimony. *See Robinson v. Barnhart*, 366 F.3d 1078, 1085 (10th Cir. 2004) ("We will not reach the remaining issues raised by claimant because they may be affected by the ALJ's resolution of this case on remand.").

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. The ALJ failed to ask Plaintiff any substantive questions at the second hearing, which affected his ability to properly assess the current state of Mr. Collins' alleged impairments, his treatment, the impact of the alleged impairments on Plaintiff's daily life, and his overall credibility. The omission was critical, considering that approximately two years had passed since the first administrative hearing and the Appeals Council had specifically

directed the ALJ to re-evaluate Plaintiff's credibility. The ALJ also erred in his evaluation of the opinions from Drs. Ghazi and Chaudry, as discussed.

As a result, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further administrative findings. On remand, the ALJ is specifically directed to: (1) conduct a thorough hearing to assess the current state of Plaintiff's alleged impairments and (2) re-evaluate the opinions of Drs. Ghazi and Chaudry, providing reasoning which is supported by the record and would allow for proper appellate review.

ENTERED on September 25, 2017.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE